STATE OF IOWA, Appellee, v. HENRY SELL, Appellant.

**WIFE AND CHILD DESERTION:** Bond—Unauthorized Forfeiture. A bond executed under Sec. 13232, Code of 1924, should not be forfeited so long as the husband and parent who executed the bond is attempting in good faith to comply with its terms, and the children are not destitute.

Headnote 1: 29 Cyc. p. 1679 (1926 Anno.)

*Appeal from Wapello District Court.*—F. M. HUNTER, Judge.

FEBRUARY 10, 1925.

PROCEEDINGS before the trial court to determine whether a bond conditioned for the care and support of minor children should be forfeited. The opinion states the facts. Upon hearing, the bond was set aside, and judgment was entered against the defendant on a verdict finding him guilty of desertion. Defendant appeals.—*Reversed*.

*W. W. Rankin,* for appellant.

*Ben J. Gibson,* Attorney-general, *Neill Garrett,* Assistant Attorney-general, and *W. W. Epps,* County Attorney, for appellee.

De Graff, J.—Defendant was indicted for the crime of wife and child desertion. The cause was tried to a jury, and a verdict of guilty was returned. Thereafter, and before sentence, the defendant made application to the district court that he be permitted to furnish bond in conformity to the provisions of Section 13232, Code of 1924. This was granted, and bond was presented and approved May 11, 1923. On March 4, 1924, an affidavit was filed, in which it was alleged that the defendant had failed to comply with the conditions of his bond to furnish a suitable home for his dependent children, and that they were neglected and in a destitute condition. Citation issued, and the defendant was required to show cause why the bond should not be forfeited. He entered an appearance, pleaded not guilty to the citation, and hearing was had before the district court in said matter. This-proceeding is based on the statute wherein it is provided:

"Upon failure of said husband or parent to comply with his undertaking, he or she may be arrested by the sheriff or other officer upon a warrant issued from the court in which the case is pending or the conviction was had, and the court may thereupon order a forfeiture of the undertaking and that the defendant be tried or committed in execution of the sentence, or for good cause shown may release the defendant upon a new undertaking." Section 13234, Code of 1924.

The trial judge determined, under the evidence, that the bond should be forfeited, and it was so ordered. Judgment was thereupon entered on the verdict.

Did the court exercise a proper discretion in the forfeiture of the bond? Ordinarily, this is a matter within the control of the trial court; and before this court will interfere, a clear abuse of discretion must be shown. We fully recognize that, in this age of matrimonial dissension and divorce from the bonds, the welfare of the child is thereby frequently and seriously menaced.

Therefore, this court is slow to establish a precedent for any relaxation of the strict enforcement of the statute involved in the case at bar. But, on the other hand, it is our duty to see that the imposition of the penalty under the statute is clearly warranted by the facts under consideration. To punish the father of a family by imprisonment in the state penitentiary is of no material benefit to the child or children involved; and, if the intent and purpose of the statute in permitting a defendant to furnish bond for support will and does reasonably meet the requirement of the situation, it were better to effectuate that intent than to impose the prescribed penalty.

Five children were involved in the indictment. Two of the children have been with the father since his conviction, so that the evidence herein relates to the other three. The oldest girl was given by the defendant to his father-in-law in June, 1922; and later, she was placed with the wife's brother, at Eldon, Iowa, without the consent of defendant. At the time of the hearing, the other two children were in the custody of the father-in-law, having been placed there by the mother, and having been taken by her from the custody of a Mrs. Lord.

It appears from the testimony on behalf of the defendant that he had made arrangements with Mrs. Lord to keep two of the children at $2.50 per week, and that the Lords were willing to continue to care for them, under the agreement with the defendant. Mr. Lord testified:

"We gave them as good care as we did our own children, and sent the oldest to school. Mr. Sell [defendant] has tried to replace the children with us. He only owes my wife a small sum, $14 to $16. He has paid her from time to time. We are now willing to take the children and keep them and look to Mr. Sell for pay."

This witness was not related to either of the parties, and he testified that the defendant was an industrious man, and visited his children every week. The evidence sufficiently establishes the fact that these two children were given proper care and attention. In fact, one witness testified that their care was "a lot better than the average. They seemed to have proper clothing, clean, and were well fed."

The defendant, prior to the filing of his bond, had been in

jail three months; and when released, he took possession of his children. Two of them he first placed with a Mrs. Sutton, and two of them he kept with him. The other girl was sick at the time, and upon advice, she was permitted to remain with the father-in-law. The defendant paid $5 a week for keeping the children at Mrs. Sutton's. When they were taken to a Mrs. Lord's, the agreement was to pay her $5 a week; and they remained with her from June until they were taken away by the mother, without the knowledge or consent of the defendant. The defendant testified:

"After I got out of jail, I worked for a while at the packing house. I got from $19 to $20 a week. I paid $10 per week to keep the children, and paid $6 a week for my board and room. I then went to mining,—opened a mine. The first five weeks, we didn't make anything, and then we only made from $10 to $12 per week; and it run that way until October, and we quit. I then went to work for Acres in his mine. We had fairly steady work there. I was back a little on the board,—$14 or $15. I have worked every day that I could, and did all in my power to support the children."

It further appears that the oldest girl remained in the custody of the father-in-law, under an agreement, as testified by defendant, that her board and clothes would be furnished her, in consideration of her help about the house. He also told the father-in-law that he would pay him for keeping the child.

Defendant further testified that he knew the grandparents were keeping two of the children, and that he had paid them nothing during the short period of time that they were not in his care.

We are satisfied that the greater part of the trouble was caused by the wife's interference with the arrangements made by the defendant for the care of his children. We are also satisfied that, at the time the wife took possession of two of them, without the knowledge or consent of the defendant, they were receiving reasonable care and support. The evidence is not sufficient to show that they were in destitute circumstances caused by any neglect on the part of the defendant. The defendant was paying $2.50 each for the two children in question, and this is the amount which the wife testified that she was paying

her mother for their support, after she took possession of them. Defendant was privileged to enter into agreements for the reasonable care and support of his children, and he should be privileged to be let alone to carry out those agreements.

With this view of the situation, we feel that the trial court was in error in declaring a forfeiture of the bond; and it is ordered that the bond be reinstated, or a new undertaking be permitted to be furnished by the defendant.—*Reversed.*

FAVILLE, C. J., and STEVENS and VERMILION, JJ., concur.